D. WILMOT SCOTT et al., Respondents, *v.* WILLIAM G. GUERNSEY et al., Appellants.

In construing wills, the law favors a construction that will not tend to the disinheriting of heirs, unless the intention to do so is clearly expressed. That meaning is to be preferred which inclines to the side of the inheritance of the children of a deceased child.

The will of S., after a devise of certain premises to his daughter, P. G., during her life, contained the following clause: " Then to be equally divided amongst her now surviving children, or any of them that may be alive at her decease, or the heirs of any that may be dead at the time of executing this my last will." — *Held*, that the time referred to was the

time the will takes effect, by vesting the estate in possession upon the death of P. G.; that the word "heirs" was used in the sense of children; and that the intent of the testator was that the children of P. G. should take, if living at her decease, or if any were then dead, leaving children surviving, that the children should take, in place of the parent.

Where, during the existence of the life estate, certain of the devisees of the remainder, with full knowledge of the limited title of the tenant for life, and without the consent of the other remainder-men, erected buildings upon the premises devised, — *Held*, that they were not entitled to any compensation therefor, and, upon partition, could not exact a reimbursement from, or claim a lien upon, the shares of their co-tenants.

The remedy by an action, for rents, by one tenant in common against another, is cumulative, and does not bar the equitable adjustment of them on a partition in equity.

The rents on a partition are a lien upon the shares or interest of any co-tenant from whom they may be due.

Where rents were due from one tenant in common at the time of the death of another, the administrator of the latter is a proper party to an action of partition, as he is entitled to receive the rents due his intestate at the time of his death.

It is a matter of discretion with the court below to direct a sale instead of actual partition, and unless the error is clear, its decision will not be overruled.

(Argued May 19, 1871; decided September term, 1871.)

Appeal from judgment of the General Term of the Supreme Court in the sixth district, affirming a judgment rendered upon the decision of the court at Special Term.

The action is for the partition of lands situate in Norwich, Chenango county, and for an accounting as to the rents by certain of the tenants in common. The right of the plaintiffs to bring this action, and the proportions in which they are interested, if at all, depend upon the construction to be given to the last will and testament of William Spier, of Columbia county, N. Y.

The will was executed by the testator in 1821. A codicil was added in October, 1830; and he died in 1833.

The following is a copy of the said will and codicil, viz.:

"In the name of God, Amen. I, Wm. Spier, of the town of New Lebanon, in the county of Columbia, and State of New York, being weak in body, but of sound mind and

memory, blessed be Almighty God for the same, do make and ordain this my last will and testament, in manner and form following, that is to say : First, I give to my well beloved wife, Lydia Spier, one-third part of my farm on which we now live, together with one-third part of the buildings thereon, and one-third of my movable estate, my horse and pleasure carriage, during her natural life (money, turnpike stock, mortgages and all kinds of obligations), except them, to be divided as hereafter directed amongst my children—having given my eldest son, Joseph Spier, $2,400, as his share of the first division of my estate—having given my second son, William Spier, $2,400 as his share of the first division of my estate—having given my third son, James Spier, $2,400, as his share of the first division of my estate—having given Ezra G. Spier, my fourth son, $2,400, as his share of the first division of my estate—I give my eldest daughter, Polly Guernsey, in addition to what I have already given her, a lot of land containing thirty-five acres, together with all the privileges and appurtenances thereunto belonging, or in anywise appertaining (except where or any part of the premises, that I have heretofore given a release, or by any means discharged my rite.) The lands lie in the town of Norwich, county of Chenango, State of New York, whereon Peter B. Guernsey now dwells. I will that the above described premises be for the use of my daughter, Polly Guernsey, during her natural life, then to be equally divided amongst her now surviving children, or any of them that may be alive at her decease, or the heirs of any that may be dead at the time of executing this, my last will. I have given my second daughter, Lydia Chichester, $1,200, as her share of the first division of my estate. I have given my third daughter, Cyntha Lane, $1,200, as her share of the first division of my estate. I have given my fourth daughter, Manerva Gifford, $1,200, as her share of the first division of my estate. I give to my three daughters, now living, and to the heirs of daughter Lydia Chichester all my household furniture, two-thirds at my decease, the other third after their mother's decease,

to be divided equally into four equal parts—those daughters
living to have one equal part, and the heirs of those not living
to have one equal part.   Should it so happen, in the course
of Divine Providence, that any of my daughters should be
dead, and leave no heirs living at the time of executing this,
my last will, then their shares to be equally divided amongst
the living, or the heirs of those not living.   The remaining
property I have after my debts and funeral charges are paid,
if any, I will should be divided into twelve equal parts—my
son Joseph Spier, or his heirs, two ; my son William Spier,
or his heirs, two ; my son James Spier, or his heirs, two ;
my son Ezra G. Spier, or his heirs, two ; my daughter Polly
Guernsey, or her heirs, one ; my daughter Lydia Chichester's
surviving heirs, one ; my daughter Cyntha Lane, or her sur-
viving heirs, one ; my daughter Manerva Gifford, or her sur-
viving heirs, one.   I will further, that if it should happen in
the course of Providence, that if either of my children should
die and leave no heirs of their own body living, at the time
of executing this my last will and testament, then I will that
their shares shall be divided amongst my surviving heirs as
above.   I do hereby appoint my beloved sons, Joseph and
William Spier, as executors of this my last will and testament,
hereby revoking all former wills by me made.

In witness whereof, I have hereunto set my hand and seal,
this twenty-fourth day of May, in the year of our Lord one
thousand eight hundred and twenty-one.

" WILLIAM SPIER. [L. s.] "

"Signed, sealed, published and delivered by the above-named
William Spier, to be his last will and testament, in the pre-
sence of us who have hereunto subscribed our names as wit-
nesses, in the presence of the testator.

" JESSE HANDE,
" ALMON TICKNOR,
" ORAN TICKNOR."

'I, William Spier, have made my last will and testament,
bearing date the 24th day of May, 1821, hereto annexed.

And whereas divers sums of money are due to me from several of my heirs, mentioned in my said will, for which I now hold their different obligations: Now, therefore, by this writing, which I declare to be a codicil to my last will and testament, and to be taken as a part thereof, I do ordain and provide as follows, viz. :

" First. That the sums of money which shall be due to me at the time of my decease, from my sons or daughters mentioned in my said will, or their heirs or representatives, or from the husbands of my said daughters, or from the husband of my daughter Lydia Chichester, deceased, their heirs or representatives, shall be applied to the payment of their respective shares, devised to them by me in my said will and testament, and shall be considered as so much paid them toward the second and last division of my estate.

" Second. The devise to my beloved wife Lydia, made to her in my said will, shall be received by her in lieu of her dower or right to one-third of my real estate after my decease.

" Third. I hereby appoint my son, Ezra G. Spier, an executor of my last will and testament, together with my sons Joseph and William Spier.

" In witness whereof, I have hereunto set my hand and seal, this fourth day of October, 1830.

"WILLIAM SPIER. [L. S.]"

" Signed, sealed, published and declared by the above-named William Spier, as a codicil to be annexed to his said last will and testament, in the presence of

" JOHN BULL, Jr., New Lebanon.<br>" GEORGE G. BULL, New Lebanon."

The judge before whom the action was tried without a jury, in 1860, found that the testator owned the land in fee at his death, and devised it by his said will. That Polly Guernsey and her husband, Peter B. Guernsey, resided at Norwich, and the testator, her father, in Columbia county, when the said will and codicil were executed. That she was about forty-three years of age in 1821, when the will bears

date, and had four children then living, viz., Peter B., Jr., aged twenty-two years; Polly, twenty years; William G., twelve to fourteen years, and Lavinia, several years younger. The eldest, Peter B. Jr., married November, 1825, and died April, 1829, leaving two children surviving, one of whom died in infancy, and the other, Wm. B. Guernsey, in 1849, conveyed all his interest in the premises to the other persons entitled under the said will. Polly Thompson, daughter of Polly Guernsey, married in 1828, and died 1847 intestate, leaving seven children surviving her, four of whom are plaintiffs, and three are defendants herein. In the fall of 1829, Polly Guernsey and her husband visited her father. She died in 1854, and her husband, Peter B. Guernsey, Sen., died in 1843.

The judge found, as conclusions of law, that William G. Guernsey and Lavinia Guernsey, children of the said Polly and Peter B. Guernsey, each owned an undivided third part of the premises in fee, and that the children of Polly Thompson owned the other third in fee and in common; each of her said children owning one-seventh of one-third part of the whole. The judge directed a reference to take an account of the rents and payments by the parties since the death of Polly Guernsey, and to report which of them has been in occupation of any part of the premises, and the value of such occupation, and the time it continued, and to take proof and report, with his opinion, as to the claims of the defendants, William G. Guernsey and James G. Thompson, for buildings and improvements on the premises, and as to title, liens, etc., and as to a sale or actual partition, etc.

The referee reported that William G. Guernsey erected a wooden building for two stores in 1833, and made several additions before the death of his mother, Polly Guernsey, worth, in October, 1861, $1,500, and increasing the value of the land $750. That he put on to the premises, in 1841, another building, worth, in October, 1861, $600, and increasing the value of the land $200. The ground rent of these buildings, the referee finds, is fifty dollars per annum. That

the buildings were erected under an agreement with the life tenant that the said William G. Guernsey should put up the buildings and have the rents; that he continued to receive the rents under that agreement until the death of his mother in 1854. That the rents so received by him largely exceeded the value of the buildings and the interest on the investment; and the referee states it as his opinion that William G. Guernsey is not entitled to be paid anything for the buildings so erected, and that he was liable for the rents since the death of his mother.

The referee also reported that James Thompson, the husband of Polly Thompson, deceased, in 1850 and 1851 erected a building of the value of $280, and before the death of Polly Guernsey sold it to James G. Thompson, and that no allowance should be made on account of it. That James G. Thompson made an addition to the said building, in 1857, of the value of $279, which is a substantial improvement. That he and his partner Lacey, occupied the first mentioned building from January 8, 1854, until August 15, 1857, and during that time the rent was worth $125 per annum and the taxes; and from that day until the spring of 1860 James G. Thompson occupied it, and during that time that the rent was worth $240 per year, deducting taxes. That he agreed with Lavinia Guernsey to account for the rent on the final settlement of the Guernsey estate; and he finds and reports as his opinion that James G. Thompson is chargeable with the rent from January 8, 1854 to April 15, 1860, and that the value of the addition erected by him in 1857, and all repairs and taxes paid by him after August, 1857, should be allowed as an offset against said rent. He finds that four of the children of Polly Thompson were minors on the 8th of January, 1854. He reported that actual partition could not be made without prejudice to the parties, and that the premises should be sold in specified parcels. He reported the balance due at the date of his report, August, 1864, from Wm. G. Guernsey for rents, to be $6,928.13; from James G. Thompson $1,733.74; from Lavinia Guernsey $4,971.24, and

several small amounts from the different heirs of Polly Thompson, deceased; all accuring since the death of Polly Guernsey in 1854. Exceptions were taken to the report, and heard at Special Term before the same judge who heard· the trial and directed the reference. The report was modified as to the said James G. Thompson, by rejecting the allowance of $279 for beneficial improvements made by him, and reducing the charge against him for the occupation of a portion of the premises to one-third of the amount, on his agreement with Lavinia Guernsey to pay rent, to whom he was adjudged to be liable for that proportion of the rent or annual value with interest, and the report in all other respects was confirmed. Judgment was entered thereupon for a sale of the premises in specific parcels, and that the sums due for rents as reported be máde a charge upon the shares of the parties from whom they were found due; and adjudging that the said William G. Guernsey and Lavinia Guernsey were the owners, each, of an undivided one-third part of the said premises in fee, and that the seven children of Polly Thompson were the owners, each of an undivided one-seventh of one-third part of said premises in fee. The said Wm. G Guernsey and Lavinia Guernsey excepted to the construction of the said will, giving the said interest to the children of Polly Thompson, and insisting that they were each entitled to an undivided half of the said premises under the said will, to the exclusion of the heirs of Polly Thompson. The said Lavinia raised no question as to the rule adopted in respect to the rents. The defendants, Wm. G. Guernsey and James Thompson, excepted to the decision charging them with the rents and for occupation, and insisted that they should be allowed for their improvements upon the premises. Other objections were also taken, which are referred to in the opinion.

On appeal to the General Term the said judgment was affirmed.

The said William G. Guernsey, Lavinia Guernsey and James G. Thompson thereupon appealed to the Court of Appeals.

*D. M. Powers* for appellant Lavinia Guernsey. Words *occurring more than once* in a will shall be presumed to be used always in the same sense. (2 Jarman on Wills, Perkins' Notes, page 527, note 18 ; 2 Ch. Cas., 169 ; 6 Doug., 268 ; 3 Drew, 472 ; 2 Redfield on Wills, page 427, note 18.) Where a testator uses an additional word or phrase, he must be presumed to have an additional meaning. (1 Redfield on the Law of Wills, page 427, note 18 ; 4 B. C. C., 15 ; 13 Vesey, 39 ; 7 Taunt., 85.) Possible as well as actual events are to be regarded. (11 Vesey, 457.) To authorize the court to alter the language, they must be able to find, from the context, that which shows to a certainty what are the right words. (1 Jarman on Wills, 418 ; 3 Paige, 242 ; 3 N. Y., 539 ; 4 Brad., 324.) A will only becomes executed at the death of the testator. (*Grimes* v. *Norris*, 6 Cal., 621.) The word was intended as introducing a substituted gift in case of the first legatee dying in the testator's lifetime. (1 Jarman on Wills, 3d ed., 426 ; 2 Jarman on Wills, 3d ed., 473 ; *O'Brian* v. *Heeney*, 2 Edw., 242.) " Or " is never changed to " and," unless the context of the will favors it, and the general intention is thereby elucidated or promoted. (*Armstrong* v. *Mason*, 1 Brad., 315 ; *Holcomb* v. *Lake*, 4 Zabr., N. J., 686.) The court has no right to nullify a clause, unless something in another part of the will shall show that it best comports with the intention of the testator. (1 Redfield on the Law of Wills, page 431, note 14 ; *Norris* v. *Beyea*, 13 N. Y., 273, 283 ; *Chrystie* v. *Phyfe*, 19 N. Y., 348.) Where a testator uses legal words, he is presumed to employ them in their legal sense. (*Sears* v. *Shafer*, 1 Barb., 418 ; aff'd, 2 Seld., 268 ; *Kingsland* v. *Rapelye*, 3 Edw., 1 ; 1 Redfield on the Law of Wills, page 427 ; Doug. R., 34 ; 6 Term R., 352 ; 4 Ves., 329 ; 5 Ves., 401.) The intent is to be gathered from the word, and is to be carried into effect if consistent with law. (*Hoxie* v. *Hoxie*, 7 Paige, 187, 192 ; 1 Redfield on Wills, 432, 435, 485 ; *Horn* v. *Van Schaick*, 3 N. Y., 538, 544 ; *Chambers* v. *Backford*, 18 Ves., 368, 374 ; *Swinfen* v. *Swinfen*, 7 Jur., N. S., 89 ; *Taylor* v. *Wendell*, 4 Brad., 321 . *Church* v. *Mun-*

*day*, 15 Ves., 396; Willard's Eq. J., 492; 9 Ves., 152; *Crooke* v. *Lee Vandes*, 9 Ves., 197, 205 ; *Melish* v. *Melish*, 4 Ves., 50; *Grey* v. *Pearson*, 6 Hoff. Law Cases [U. S.], 61.) The law gives effect to a will, although its provisions are unreasonable or unjust. (*Clapp* v. *Fullerton*, 34 N. Y., 197 ; *Manigault* v. *Deers*, 1 Redy Eq., 298; *Segunn* v. *Segunn*, 3 Keys, 665.) Extrinsic evidence and collateral circumstances are never admissible to control or influence the construction of a will which is founded upon plain language and well settled rules. (*Bunner* v. *Storm*, 1 Sandf. Ch., 357; *Mann* v. *Mann*, 14 John., 1; *Wolfe* v. *Van Nostrand*, 2 N. Y., 436.) The estate did not vest in the children of Polly Guernsey until the decease of the tenant for life. And Polly Thompson having died before the life tenant, the estate never vested in her, and her children never acquired any estate or interest through her. (*Carmichael* v. *Carmichael*, 4 Keyes N. Y. R., 346; *Hunt* v. *Hall*, 37 Maine [2 Heath], 333; *Phelps* v. *Phelps*, 28 Barb., 121.)

*B. F. Rexford* for appellants William G. Guernsey and James G. Thompson. The intent of the testator was that only the children of Polly Guernsey who were then living and survived her should take; and in case of the death of all, then the property to go to their heirs. (*Sturgess* v. *Pearson*, 4 Madd., 411; *Harrison* v. *Foreman*, 5 Ves., 207; *Mackell* v. *Winter*, 3 Ves., 536; 1 Roper on Leg., 415.) Every portion of the will should have its proper effect, and the intent of the testator be observed. (*Reeves* v. *Newenham*, 2 Redy P. C., 36; *Chrystie* v. *Phyfe*, 29 N. Y., 348.) "Or" will not be changed to "and," unless it be apparant on the face of the will that the latter was intended. (*Armstrong* v. *Mason*, 1 Brad., 315; *Gettings* v. *McDermott*, 2 M. & K., 75; *Harrison* v. *Bowe*, 3 Jones' Eq. [N. C.], 578; 19 U. S. Digest, 197, § 9 ; *Chipchase* v. *Simpson*, 16 Simons, 487; *Girdlestone* v. *Doe*, 2 Simons, 227.) Where a co-tenant who has not paid his share of improvements seeks partition, the court will so partition as to give the portion improved to him

making the improvements, or make the other co-tenants pay for the same. (*Hickcock* v. *Skinner*, Hoff. 21 ; *Swan* v. *Swan.* 8 Price, 518; *Green* v. *Putnam*, 1 Barb., 500; *Jackson* v. *Bradt*, 2 Caines R., 302; 1 Story Eq. Juris., §§ 655, 656; Willard Eq. Jur., 701; *Louvalle* v. *Menard*, 1 Gilm., 39; *Haskins* v. *Spiller*, 1 Dana, 170; *Brookfield* v. *Williams*, 1 Green Ch., 341; *Nelson* v. *Clay*, 7 J. J. Marsh, 141; *Borah* v. *Archer*, 7 Dana, 176.] The tenant making improvements is not bound to account for its rent, but only for the fair use of the land as he received it. (*Hancock* v. *Day*, McMullen Ch., 69, 298; *Thompson* v. *Bostick*, McMull. Ch., 75; *Moore* v. *Cable*, 1 John. Ch., 385.) And if he supposed he was the owner, he is to have the portion improved set off to him. (*St. Felix* v. *Rankin*, 3 Edw. Ch. R., 323; *Conklin* v. *Conklin*, 3 Sandf. Ch. R., 64; *Neesom* v. *Clarkson*, 4 Hare, 97.) These rules are never changed by the fact that the improvements were put on during the life estate. (*Green* v. *Putnam*, 1 Barb., 500.) The policy of the law is that the land shall not be sold in a partition suit unless it is absolutely necessary. (2 R. S., 330, § 81; *Smith* v. *Smith*, 10 Paige, 470; *Clason* v. *Clason*, 6 Paige, 541; *Van Arsdale* v. *Drake*, 2 Barb., 599.) If one tenant in common has received more than his share of rents, they may be recovered by a suit, not at common law, but by statute. (1 R. S., 750, § 9; *Woolever* v. *Knapp*, 18 Barb., 265.)

*Isaac S. Newton* for respondents. Where technical words are used in a will, they may be construed according to their popular and ordinary signification. (*Thomas* v. *Thomas*, 3 B. & C., 825; 1 Red. on Wills, 464, 688; 3 Barb. Ch., 475.) To effectuate the testator's intention, words and limitations may be transposed, supplied or rejected. (*Prestredge* v. *Grooms-bridge*, 6 Sims., 171; *Pond* v. *Bergh*, 10 Paige, 140; *Croner* v. *Pinckney*, 3 Barb. Ch. R., 475; *Hone* v. *Van Schaick*, id., 506; *De Kay* v. *Irving*, 5 Den., 646; 9 Paige, 521; 3 Brad., 230; 3 Brad., 287; 1 Brad., 154.) And the situation of the family considered. (*Wolfe* v. *Van Nostrand*, 2 Comst., 436.)

The intention of the testator is the first great object of inquiry, and to this object technical rules are, to a certain extent, made subservient. (4 Kent's Com., 534, and note *c;* Bacon's Ab., title Wills, *g,* and cases cited; 2 Seld., 420; 3 Comst., 538.) Each clause is to be construed so as to make it valid, if possible. (*Dubois* v. *Ray,* 35 N. Y., 162; *Chrystie* v. *Phyfe,* 19 N. Y., 348; 1 Redf. on Wills, 431, 432, 470; *Post* v. *Hover,* 33 N. Y., 558; *Davis* v. *Swan,* 4 Mass., 208; *Parsons* v. *Winslow,* 6 Mass., 208; also 2 Paige, 130; and 3 Brad., 64; Bacon's Abridgment, Wills, *g,* and cases cited in 4, 5, 6 and 7 of Vesey; 40 Barb., 89.) "Or" will be changed to "and," to give meaning to the whole sentence. (*Dubois* v. *Ray,* 35 N. Y., 171, 172; *Chrystie* v. *Phyfe,* 19 N. Y. R., 364; *Denn* v. *Kerneys,* 9 East, 366; *Jackson* v. *Burhans,* 6 John., 54; *Van Vechten* v. *Pearson,* 5 Paige, 512; *Roosevelt* v. *Thurman,* 1 John Ch., 228; *Grim* v. *Dyar,* 3 Duer, 354; 1 Jarman on Wills, 443, and note 1, citing twenty American cases, read from 1 Jarman, at page 416, in point, and on to 452; 5 Comst., 112; Cro. Jac., 322; 2 Hilliard's Real Prop., 535; 3 Term, 470; 11 Metc., 88.) The heir is not to be disinherited unless the intent to do so is clearly expressed. (1 Redf. on Wills, 4, 5; *Hayden* v. *Stoughton,* 5 Pick., 536; *Areson* v. *Areson,* 3 Den., 461; 1 Brad. Rep., 450; *Lynes* v. *Townsend,* 33 N. Y., 550.) The striking out of words is authorized when inconsistent or meaningless, or in conflict with the general intent. (12 Mass., 537, 542; 22 Maine, 413, 427; *Kane* v. *Astor's Executors,* 5 Sand., 467; 5 Seld., 113; 1 Jarman on Wills, 420; *Boon* v. *Comforth,* 2 Ves., 576; *Coryton* v. *Hilyet,* 2 Comst., 340; 12 East, 515; 9 Ves., 566; *Mason* v. *Jones,* 2 Barb., 229; *Pond* v. *Bergh,* 10 Paige, 152, and cases cited; *Arcularius* v. *Geisenhainer,* 3 Brad., 64.) So words are supplied to effectuate intent. (*Gibson* v. *Walker,* 20 N. Y., 479; *Covenhoven* v. *Shuler,* 5 Paige, 130; *Brodhurst* v. *Brodhurst,* 1 Paige, 343.) Technical words will always yield to carry out testator's design. (*Sherwood* v. *Sherwood,* 3 Brad., 230; *Burtis* v. *Doughty,* 3 Brad., 261.) A prior gift not disturbed more than necessary by a posterior

qualifying disposition. (*Arcularius* v. *Geisenhainer*, 3 Brad., 64; 1 Jarman, 165, 414.) Where a life estate is granted to one, and then the estate to be divided amongst others, the latter take a vested estate in fee on the death, to vest in possession when the life estate terminates. (*Dubois* v. *Ray*, 35 N. Y., p. 168, and refs.; *Brown* v. *Lyon*, 2 Seld., 419; *Wendell* v. *Crandall*, 1 Comst., 491; 2 Den., 336; 2 Hill, 254; 4 Hill, 138; 2 Seld., 360; *Carpenter* v. *Schermerhorn*, 2 Barb. Ch. R., 314; see this case last above; *Ex parte* Turk, 1 Brad., 110; 4 Paige, 336; *Van Wyck* v. *Bloodgood*, 1 Brad., 154; *Dominick* v. *Moore*, 2 Brad., 201; *Johnson* v. *Valentine*, 4 Sand. S. C. R., 36; see this case; 9 Paige, 265; 7 Paige, 187; 2 John., 288; 12 Wend., 83; 5 Paige, 512; 25 Wend., 119; 22 Barb., 195.) A future interest in lands, which can take effect as a contingent remainder, shall never be taken as an executory devise. Nor will a remainder be held contingent when it can be taken to be vested. (*Dubois* v. *Ray*, 35 N. Y., 168; *Johnson* v. *Valentine*, 4 Sand. S. C. R., 36; *Wolfe* v. *Van Nostrand*, 2 Comst., 436; Butler's Fearne, 387, and note; see numerous cases cited on page 522 of 5 Sand. S. C. R., and also 1 Bennett & Heard, Mass. Dig., 424; *Kane* v. *Astor's Executors*; *Parsons* v. *Lyman*, 4 Brad., 268; 9 Cush., 516; 5 Mass., 535.) The Thompson children take as purchasers, not as heirs, and each has an equal share with William G. and Lavinia. (Redf. on Wills, 487; *Lee* v. *Lee*, 16 Abb., 127; *Eccard* v. *Brooke*, 2 Cox, 213; *Horridge* v. *Ferguson*, Jacob, 583; 1 Jarman, 452; *Baistoro* v. *Goodwin*, 2 Brad., 416; *Crosby* v. *Clare*, Amb., 397; *Butler* v. *Stratton*, 3 Bro. C. C., 367; *Dominick* v. *Sayre*, 3 Sand. S. C. R., 565.) In partition, a question arising on construction of a will may be void. (*Warfield* v. *Crane*, 4 Keyes, 448; *Beach* v. *Cooke*, 28 N. Y., 508; 15 N. Y., 617; 13 How., 476; 9 Cow., 530; 5 Den., 285.) One tenant in common cannot make improvements and recover for them. (*Putnam* v. *Ritchie*, 6 Paige, at p. 405; *Mumford* v. *Brown*, 6 Cow., 475; 2 Caines' R., 303; *Taylor* v. *Baldwin*, 10 Barb., 590; S. C., affirmed, 10 Barb., 626; *Putnam* v. *Ritchie*, 6 Paige, 404, 405; *Matter of Heller*, 3

Paige, 199.) If entitled to improvements, he must account for rents of the property as improved. (*Rasspass* v. *Breckinridge*, 2 A. K. Marsh, 581.) One tenant in common assuming to receive rents receives them for the others, not in a body, but each one's share for the person entitled. (*Hall* v. *Fisher*, 20 Barb., 446; *Hannan* v. *Osborn*, 4 Paige, 336.) Such a claim draws interest. (*Van Rensselaer* v. *Jewett*, 2 Comst., 135, 140; see brief of Hill in same, p. 138, and references; 1 Ker., 80; 15 N. Y. R., 399; 20 N. Y. R., 14; *Stoughton* v. *Lynch*, 1 John Ch. R., 467; *People* v. *Gashierie*, 9 John., 71; 7 Wend., 109; 5 Cow., 587; 2 Wend., 413; 12 How. Pr. R., 523; 4 John., 183; *Selleck* v. *French*, 1 Conn., 32; see 1 American Leading Cases, 343, 347, 351, 360; *Utica Ins. Co.* v. *Lynch*, 11 Paige, 520.) James Thompson's occupancy was not for the benefit of his children. (*Woolever* v. *Knapp*, 18 Barb., 265.) The excess of rents received is a lien on the share of the one receiving. (*Hannan* v. *Osborn*, 4 Paige, 343; *Warfield* v. *Crane*, 4 Keyes, 448; *Brede* v. *Lathrop*, 22 N. Y., 535.) An accounting in these cases not only can be had, but is usual. (See *Hannan* v. *Osborn*, 4 Paige, at pp. 342, 343; *Bullwinker* v. *Ryker*, 12 Abb., 311; Hoff., 21; 1 Barb., 500; 11 How., 489; 2 B. Ch., 399.) This lien is not cut off or affected by any subsequent lien. (*Keirsted* v. *Avery*, 4 Paige, 9; *Matter of Howe*, 1 Paige, 125; 2 Paige, 217; 2 Barb. Ch., 165.)

LEONARD, C. The title which the parties to this action claim to derive under the last will of William Spier demands the judicial construction of a single paragraph. It is as follows, viz.: "I will that the above described premises be for the use of my daughter, Polly Guernsey, during her natural life, then to be equally divided amongst her now surviving children, or any of them that may be alive at her decease, or the heirs of any that may be dead at the time of executing this my last will."

The whole instrument indicates unmistakably that it was prepared by a person who had but little acquaintance with

the correct use of legal terms relating to his subject, and disregarded the grammatical construction of his sentences, and the arrangement of language to convey his ideas with certainty. The intention of the testator is not, however, in the least degree doubtful to my mind. It is his clear intention that his daughter Polly shall enjoy the property for her life, remainder to her children, with the right of representation in case any of them died before her. It will be unprofitable to discuss the rights of children of Polly Guernsey, born after the publication of the will, because none were born. She had four children at that time—two sons and two daughters—and none were born to her afterward. One of her sons, Peter B., died in the lifetime of the testator, and before he made the codicil, leaving issue, two children, one of whom, a son, is still living; the other died in infancy.

. One of the daughters of Polly Guernsey married James Thompson, and died in the lifetime of her mother, leaving lawful issue, seven children, all of whom survived Polly Guernsey, their grandmother, and are parties to this action, claiming one-third of the premises devised by the will of William Spier, as the representatives of their mother, Polly Thompson. William G. Guernsey and Lavinia Gurnsey, a son and daughter, who only of the said four children of Polly Guernsey were living at the time of her death, claim the whole estate under the will of William Spier, to the exclusion of the children of their deceased brother, Peter B., and of their sister, Mrs. Thompson. They insist that the last member of the sentence quoted above from the will must be treated as senseless and nugatory, or that, if retained, the word "executing," in that sentence, must be held to relate to the time of signing the will by the testator. There is authority for rejecting words and even sentences from a will where the plain intention of the testator is thereby promoted or carried into effect. The chief and only object of judicial construction, when applied to a will, is to ascertain and determine the intention of the testator. It is desirable to give effect to the language rather than to reject or annul

it.   The law favors a construction which will not tend to the disinheriting of heirs, unless the intention to do so is clearly expressed.

There is no reason apparent from the facts proven in this case, nor from the expressions and meaning of the language of the testator, that he intended to disinherit the children of any deceased son or daughter of Polly Guernsey.   It will require a very artificial rendering of the will to arrive at any such conclusion.   That meaning is to be preferred, if the case were balanced, which inclines to the side of the inheritance of the children of a deceased child.   We can see no reason why the testator should prefer William G. and Lavinia to Peter B. and Polly, and their respective children in case of their death.

We unhesitatingly pronounce, in this case, against the application of the rule for annulling the last member of the sentence referred to, not only for reasons before mentioned, but for others, hereinafter to be mentioned, which attribute to that sentence an important sense and meaning.

The learned court from which this appeal has been taken arrived at the intention of the testator, or the expression of that intention, by changing the word "or" to "and," in the last two members of the sentence under examination.   This rule of construction is also well sanctioned by authority, where the intent is not doubtful.   There is no actual necessity for the alteration of any word.   The same result will follow by repeating the word "amongst" after the first "or," as it is plainly there to be understood or implied, and holding that the word "executing," in the last member of the sentence, refers to the time when the will takes effect, by vesting the estate in possession, at the death of Polly Guernsey.   The sentence, so amended, after the creation of the life estate, will be read as follows: "Then to be equally divided amongst her now surviving children, or '*amongst*' any of them that may be alive at her decease, or the heirs of any that may be dead at the time of executing this my last will."   The last "or," here used, puts "the heirs of any that may be dead"

as an alternative in the place of deceased children. The persons who are to take the remainder in possession are children, or the heirs of deceased children. This construction gives the last " or " the same signification that " and " would have, if there used. The testator has used the word " heirs " in the sense of children. He has not reflected that this word might include persons other than children, and the result has not disappointed his expectation. The heirs of his granddaughter, Polly Thompson, have proved to be her children.

Whether the sentence be read as above indicated, or by changing the word " or " to " and," it will conform to the undoubted intention of the testator, that the children of his daughter, Polly, should take, if living at her decease, or if any of them were then dead, leaving children surviving, that the children should stand in the place of the parent. The testator has employed the word " executing " in a like common. or vulgar sense as he has the word " heirs." He refers to the time when the estate vested in fee by the death of his daughter, Polly. The will then became fully executed as to these heirs and this property. If the word " executing " be held to refer to the date or time of signing, it would be singularly inappropriate and unnatural, for Polly Guernsey's children were then all living, and none of them were married or had any children. The husband of Polly Guernsey was then living, and might have taken as heir of a deceased child, under such a construction. It cannot be supposed that the testator had any such intention. It is possible that the testator ignorantly believed that his executors had something to do about " executing " the will, as to this land as well as to the " movables " of his estate, and that he referred to the time of the execution of their duties. Whether it refers to the time of the death of the testator, or of Mrs. Guernsey, as the time of executing the will, it is equally effectual to save the inheritance of the mother's share to the children of Polly Thompson.

The Supreme Court held that the tenants who erected buildings on the land were not entitled to any compensation

therefor; and this is also alleged to be error.    The buildings were constructed during the life estate of Mrs. Guernsey, with full knowledge of the limited nature of her title.    It has not been claimed that they were erected under any mistake as to the extent of her title or right.    The consent of the others, having estates in remainder, was not asked, nor were any of them invited to contribute or join in the enterprise.    The buildings were erected as a venture.    It was hoped that they would return the investment with a profit; and there is nothing to indicate that William G. Guernsey or the Thompsons relied upon any moral or legal obligation that any one of their co-tenants should ever pay any portion of their expenditures.

The case of *Green* v. *Putnam* (1 Barb. S. C. R., 500) is the strongest authority for the appellants, and the most relied on by them to sustain their claim for compensation.    The claim was allowed in that case, as an equitable lien, to be adjusted by the court in partition, on very good grounds. The plaintiff had been consulted, and had consented to the construction of a smaller building, and, when it was ascertained that a larger one was being constructed, objected.    The lien in favor of the party who expended the money, or his assignee or grantee, was limited to the sum necessary for erecting the smaller building, and no relief was granted for the amount expended without the plaintiff's consent.    As to such expenditure, it was a venture; it might be successful, or otherwise, but it gave no right to exact a reimbursement, or to claim a lien upon the share of the other parties.    In *Putnam* v. *Ritchie* (6 Paige, 390), the building was erected under a mistake as to the title.

*In re Heller* (3 Paige, 199), the court exercised the equitable power of chancery over the estate of an idiot, to pay the damage sustained by his co-tenant for the wanton destruction of a building belonging to them in common.    In *Conklin* v. *Conklin* (3 Sandf. Ch. R., 64), the improvements were made under a mistake as to the title.

There was no consent, mistake or other equitable ground in this case for relieving a party who made his investment

with full knowledge of the facts, voluntarily, and without any inducements offered by other co-tenants. Had the appellants offered to share their rents, upon being paid a due proportion of the value of the improvements after the termination of the life estate, it might have afforded a better ground to claim compensation. The appellants are not within the reason of any of the adjudged cases, where relief has been granted in partition for money expended in improvements by one of several tenants in common. If the land has been really enhanced in value by the improvements, the appellants are in better plight than strangers, as they will receive their *pro rata* share of the increased proceeds of the sale. The owner cannot be called upon to afford any indemnity or compensation for money expended by a stranger for improvements, if he had full knowledge of the risk he was encountering when they were made.

Wm. Guernsey erected the buildings, not as himself having any interest in the property, but on a special agreement with the tenant for life. The arrangement was a favorable one to him, and he received full compensation for his expenditures. When the life tenant died, the property as it stood, with the buildings on it, belonged to the heirs. He continued to occupy, knowing all the facts, and must pay the full value of his occupation.

The remedy for rents, by one tenant in common against another under the statute, by an action, is cumulative, and does not bar the equitable adjustment of them on a partition in equity. (1 R. S., 750, § 9.) The rents, on a partition, are a lien upon the shares or interest of any co-tenants from whom they may be due.

The objection that D. Wilmot Scott has been improperly added as a party to the action, as administrator of his deceased wife, who was one of the children of Polly Thompson, is not well taken. He, as administrator, is entitled to receive the rents due to his wife at the time of her death, and is, for that reason, a proper party to the accounting. It is not necessary

that he should be turned over to an action under the statute for their recovery.

It appears from the complications arising from infancy, minuteness of some of the shares, difference in value of the lands, and the liens for rent on the shares of some of the parties, that an actual partition could not be made without prejudice to the rights of some of them. The decree provides for sales in small parcels, which will enable any of the parties to purchase to the extent of their respective shares or interest in the whole proceeds. There is no error in this respect. It must be presumed also, that the court below exercised its best discretion in providing for a sale, instead of an actual partition, which we ought not to overrule unless the error is clear. The judgment should be affirmed with costs.

All concur.

Judgment affirmed.