# SUPREME COURT.

HENRIETTA H. WRIGHT agt. B. HUNTINGTON WRIGHT and JAMES H. SEARLES.

*Tenants in common — Devisees take by statute as tenants in common unless it is expressly declared to be in joint tenancy — the right to an accounting between tenants in common and to charge whatever has been received from the property by one more than his moiety upon his share as a lien.*

Henry Huntington died in 1846 leaving a will whereby he gave to his daughter, Henrietta D. Wright, the use or income of a certain share of his real and personal property, to have and to hold for her life, and at her decease the said share was to go absolutely to her heirs. The said Henrietta D. Wright died in 1865 leaving two children, to wit, the plaintiff and the defendant Wright. By the will of their grandfather

Wright agt. Wright.

the executors and trustees were empowered to sell, convey and pay over and transfer to the different devisees their share or portion. These children took equally, share and share alike. In 1866 and 1868 the executors transferred real and personal property to the plaintiff and defendant Wright, jointly. B. N. Huntington was the acting trustee and executor. Some seven or eight years ago accounting proceedings were had and it was found that there was still coming to plaintiff and defendant Wright from their grandfather's estate $190,000. The said executor, B. N. Huntington, made an assignment for the benefit of creditors in 1876, and a large portion of the property so assigned by him comprised the property of the grandfather's estate. All of this property, both real and personal (with some exceptions of minor importance), was transferred by B. N. Huntington's assignee to the plaintiff and defendant Wright, jointly, in part payment of what was still coming to them under the will. The defendant Wright, from time to time, received the proceeds from the joint sales of the property, which came to him and plaintiff as tenants in common from their grandfather's estate, and from the bonds, mortgages and contracts, the plaintiff uniting in the deeds, and in some instances uniting with the defendant in satisfying mortgages that had been paid to the defendant ·Wright, but it was agreed between the parties that the defendant should account to the plaintiff on final settlement for all the moneys received by him from this property held by them as tenants in common, and that when they received what they could from the estate the plaintiff was to have her share on final settlement of the property which came to them from their grandfather's estate. The defendant Wright has received from this joint property about the sum of $226,888, and has paid over to the plaintiff not to exceed $9,000. There is still remaining of this property, which stands in the name of plaintiff and defendant Wright, real estate of the value of about $95,000, and personal property contracts, &c., to the amount of about $10,000. On the 14th day of January, 1878, the defendant Wright made a general assignment for the benefit of creditors to the defendant Searles, who has qualified and is now acting as such assignee, and said assignee now claims to hold for the benefit of creditors one-half part of all the real and personal property now remaining in the name of plaintiff and his assignor the defendant Wright. In an action brought by plaintiff for an accounting and to have the property undisposed of set apart to the plaintiff, or that her half of what the defendant might have disposed of be declared a lien on the legal estate of Wright or his assignee in the balance:

*Held, first,* that where tenants in common sell and convey property and one receives the entire purchase-money the other can maintain an action for money had and received to recover his proportion of the price. So

he can to recover his share of the rents received by the cotenant, but that will not bar his remedy for an equitable adjustment and lien.

*Second.* That an action of account will lie in this case. That action is in its nature equitable, although given by statute; it was before and still is a matter of equitable cognizance. It involves the idea of agency, an implied trust, and whatever remedy is appropriate in such an action can be invoked hereby by the plaintiff.

*Third.* That the subject of the tenancy was the undivided share of the two in the estate of their grandfather, and the fact that it was handed over to them in different parcels or by different instruments does not change the subject of the tenancy. The whole is to be considered one subject.

*Fourth.* That the plaintiff has an equitable lien on the share of her brother, the defendant Wright, in the balance as it now exists for her share of what her brother has received in excess of her.

*Fifth.* The rights of the assignee of defendant Wright are no greater than the rights of the latter would be. The assignee takes subject to all equities of third persons.

*Utica Special Term, November*, 1879.

*W. E. Scripture,* for plaintiff.

I. The rule is so well established that the defendant Searles in this action can take no greater rights than the defendant Wright had at the time of the assignment, and takes subject to all the equities between the parties, that we will not trespass upon the court by citing cases on that point.

II. Devisees take by statute as tenants in common unless it is expressly declared to be in joint tenancy (3 *Revised Statutes, page* 14, *sec.* 44 [*5th ed.*]).

III. The right of an accounting is fully recognized by courts of equity in case of partners and tenants in common (2 *Van Santvoord's Equity,* 163, 165). Same volume (*page* 160) the learned writer says: "An action for an accounting between partners, principal and factor, tenants in common and joint tenants, and in a great variety of other cases which it would be impossible to mention, is a well-defined branch of equity jurisprudence." In suits in equity the court administers relief according to its own notions of equity (4 *Barbour,* 229). The case of *Van Horn* agt. *Fonda* (5 *Johnson's Chancery,* 406) is

a strong case showing the duties and high obligations that exist between claimants of a common subject and that an equitable adjustment will always be granted.

IV. In *Nicol* agt. *Mumford* (4 *Johnson's Chancery*, 526) it was held that part owners of a ship would be treated as partners as to the freight and cargo and have a lien thereon for any balance due on account thereof, but would not have a lien upon the ship itself.. The case just referred to is over-ruled by the case of *Dunham* agt. *Davis* (8 *Barbour*, 90, 94) where it was held that the lien existed as to both vessel and freight whether they were considered as tenants in common or as partners. In *Williams* agt. *Lawrence* (53 *Barbour*, 324) it was held that an accounting could be had between the owners of a ship and cargo. *Buchan* agt. *Sumner* (2 *Barbour's Chancery*, 167) holds the rule to be that under the New York statutes where real estate is purchased with partnership funds the partners take as tenants in common of the legal title; that such real estate is, in equity, chargeable with the firm debts first. Second, with any balance which may be found due from one copartner to the other, and, Third; that the separate creditors of either can take nothing until such equitable adjustment (*Same rule restated at page* 336 *same volume; see, also, Collumb* agt. *Read*, 24 *N. Y.*, 505). The moment a partnership ceases the partners become tenants in common of the property, and although they are then tenants in common of the property the same equitable rights of an accounting exist, thus showing that tenants in common stand on a footing with partners (*Collyer on Partnership, sec.* 545; 2 *Barb.*, 625).

V. In this state the right to an accounting between tenants in common and to charge whatever has been received from the property by one more than his moiety upon his share as a lien is fully settled. The first leading case is *Hannan* agt. *Osborn* (4 *Paige Chancery Reports*, 336) where it was held that one co-tenant has an equitable lien upon the other's interest in the property where he had collected more than his

share of the rents, and that it was enforceable against the same. In *Scott* agt. *Guernsey* (60 *Barb.*, 165) one of the tenants in common received all of the rents of certain real estate for a period of thirty years, or thereabouts, and the court held that the rents were a lien upon the share or interest of the co-tenant who had received them; it was also held that the co-tenant receiving the rents was liable to pay interest on the same. The court, at page 178 of this case, say : " There can be no doubt that the accounting ordered between these tenants in common was proper in this case. This is not the statutory proceeding for partition but a suit in equity, and, therefore, as the court has jurisdiction of the subject-matter and the parties in interest, it is in accordance with a well-established rule that it should do complete justice between the parties by disposing of all questions between them in relation to the land and its use. In the language of judge STORY, " the jurisdiction having once righfully attached it shall be made effectual for the purposes of complete relief." This case is affirmed in 48 *N. Y.*, 107.

VI. Three Revised Statutes (*page* 39, *sec.* 9 [*5th ed.*]) reads as follows : " One joint tenant or tenant in common may maintain an action of account, for money had and received, against his co-tenant for receiving more than his just proportion." The remedy given by this statute to one tenant in common against another is cumulative and does not bar an equitable adjustment and accounting for moneys received for or on account of the property (*Scott* agt. *Guernsey*, 48 *N. Y.*, 107). This statute applies to cases when rent or payment in money, or in kind, due in respect of the property is received from a third party by one co-tenant who retains for his own use the whole or more than his proportion (*Dresser* agt. *Dresser*, 40 *Barb.*, 304). It will be observed from the foregoing cases that courts of equity hold that a co-tenant's interest in lands that remain at the time a bill is filed for an accounting and relief is subject to a lien for any and all moneys he has received from the property held in common.

Take, for an example, "the case of rents received; it is made a charge upon the land out of which they are derived and directly upon that tenant's share who has received the money, although the rents are proceeds from the entire lands. If this is so, would there be equity in the position that moneys received from sales of part of the property itself should not be a lien upon the share of the tenant that had received the proceeds of the sales?

VII. One tenant in common cannot receive more than his own moiety or share of the property (*Stevens* agt. *Rugles*, 5 *Mason* [*U. S.*] *Reports*, 221), therefore we go further in this case than the question of lien and claim that the defendant Wright has received more than his moiety or just proportion of all the property that came to plaintiff and defendant from their grandfather's estate; and if he has then he has no real interest in the property that now remains, and that the apparent interest of the defendants in this property in question should be conveyed to the plaintiff. We take, also, the position, and believe it to be just, that if Mr. Wright or his assignee should file a bill they would not be entitled to hold any part of this property as against the plaintiff.

VIII. There is still another view of this case favorable to the plaintiff. It was agreed between the parties that when they had received what they could from their grandfather's estate there was to be an accounting and plaintiff was to have her share of the entire property; under the agreement the defendant has received and the plaintiff has performed, and plaintiff is entitled to have what property there remains conveyed to her. On the point as to the power of the court to compel a specific performance we cite *Lobdell* agt. *Lobdell* (33 *How.*, 347); 2 *Story Equity Jurisdiction*, 747. Equity will sometimes refuse specific performance on the ground of *laches* and great delay, but not when the delay is by common consent and has occasioned no injury to the party complaining (*Leaird* agt. *Smith*, 44 *N. Y.*, 619), and it is immaterial whether the subject relate to real or personal estate

(1 *Madd. Chancery Practice*, 295; 2 Story, *sec.* 717; 1 *Vem.*, 159).

IX. The defendants claim that this property came to these parties at different periods and is, therefore, independent and separate and not one subject. We answer that it is an entirety; that the property all came from one common source; that it all came by virtue of their grandfather's will, and that all of it was from the estate of Henry Huntington, and being a common subject and there being community of interest it cannot be separated; and the fact that there was an agreement between the parties that there was to be an accounting, &c., when they had received what they could from their grandfather's will makes this one entire transaction; therefore we respectfully submit that as the account between the parties has already been established in this court that the plaintiff have judgment that all of the property belongs to her and that a conveyance be decreed, or that the moneys which have been received by the defendant Wright more than his share be charged to him, and that the same be declared a lien upon the defendants' interest in the property and the property sold and the proceeds paid over to the plaintiff.

*Adams, Swan & Doolittle*, for defendant Searles.

*Dennison & Everett*, for defendant Wright.

MERWIN, *J.* — The plaintiff and the defendant Wright are the children and only issue of Henrietta D. Wright, who was a daughter of Henry Huntington, who died in October, 1846. He left a will by which, after providing for the payment of his debts and a specific devise to his son, Benjamin, he directed that all the rest of his estate, real and personal, be divided into five equal parts, and one of such parts he gave and devised to his executors in trust to receive the rents, profits and income thereof and apply the same to the sole and separate use of his daughter, the said Henrietta D. Wright, during

her life, and at her death he gave and devised the said part to her issue, in equal proportions, absolutely. The executors had full power to sell and convey any of the real estate. Mrs. Wright died on 23d September, 1865. Thereafter, and in January, 1866, the said executors made a transfer of divers personal securities, amounting to about $28,000, to the plaintiff and said B. Huntington Wright on account of their share in the estate; also another transfer of securities, as of June 1, 1866, of about $12,000; also a like transfer in August, 1868, of about $17,000; also a conveyance of divers parcels of real estate in July, 1866, in value then about $42,000. After this there was a proceeding instituted in the surrogate's court against Benjamin N. Huntington, then sole executor, for an accounting which resulted in a decree which, among other things, adjudged that there was due to plaintiff and her brother from the executor, on account of their said share, about $190,000. Huntington then made a general assignment for the benefit of his creditors, and under this the assignee made several transfers to the plaintiff and her brother of real and personal property in part payment of their judgment.

All of these transfers and conveyances were made to the plaintiff and her brother together, so that their legal estate in the property transferred in each case was that of tenants in common. The instruments were of different dates and from different persons, but were all made and received towards the payment of the same claim, that is, the share of plaintiff and her brother in their grandfather's estate. To that extent all the property was derived from the same source.

The plaintiff and her brother lived together, and the latter has always had the management of the property as it was from time to time conveyed to them. Nearly all of the securities transferred to them in 1866 and 1868 have been converted into money by him and he has used the proceeds for his own benefit; she sometimes joined in the execution of discharges of mortgages. Much of the real estate was sold, he

doing the business and receiving the money and she joining with him in the deeds.  She received from him at the rate of about $600 a year, which apparently would be much less than half the income.  Evidently she knew he received the money, but what he did with it I think it does not appear that she knew.  She knew that he had it and used it.  This she assented to.  She probably did not know the extent to which he was using it.  There seems to have been no definite arrangement between them about the management or disposition of the property.  It seems, however, to have been understood between them that when the estate was settled they should then have an accounting between themselves and would divide up.  She, for the time being, trusted everything to her brother.

Matters ran along in this way till after the transfers from the assignee of the executor, when B. Huntington Wright failed and made a general assignment to the defendant Searles. I infer that more than one-half in the aggregate of the property has been disposed of by B. Huntington Wright and the proceeds applied to his own use, and the question is whether the plaintiff can, in effect, have the balance for or on account of her share.  This action is brought for an accounting and to have the property undisposed of set apart to the plaintiff, or that her half of what the defendant Wright has disposed of be declared a lien on the legal estate of Wright or his assignee in the balance.

Where tenants in common sell and convey property and one receives the entire purchase-money the other can maintain an action for money had and received to recover his proportion of the price (*Coles* agt. *Coles*, 15 *Johns.*, 59); so he could to recover his share of the rents received by the co-tenant (1. *R. S.*, 750, *sec.* 9; 2 *R. S.* [6th *ed*], 1131, but that would not bar his remedy for an equitable adjustment and lien (*Scott* agt. *Guernsey*, 48 *N. Y.*, 124).  The statute above cited gave an action of account or for money had and received against a co-tenant for receiving more than his just proportion.

The statute does not say of what it shall be the just propor- tion, but it is left to apply generally to whatever is the subject of the tenancy. Every case in which a tenant in common receives more than his just share is within the statute; a similar statute in England is so construed (*Henderson* agt. *Eason*, 9 *English Law and Equity Rep.*, 340).

I have no doubt an action of account will lie. That action is, in its nature, equitable; although given by statute it was before, and still is, a matter of equitable cognizance (1 *Story's Equity*, secs. 446, 466). It involves the idea of agency, an implied trust, and whatever remedy is appropriate in such an action can be invoked here by the plaintiff.

A more difficult question to determine is, what shall be considered the subject of the tenancy.

It is claimed by the defendant, the assignee, that the property conveyed by each instrument must be considered by itself, and that plaintiff's rights or wrongs, with reference to the property in one instrument, cannot be remedied by seizing upon the property derived through another conveyance and that especially what was conveyed by the assignee of the executor in payment of the judgment cannot be affected by the state of accounts existing before then between the parties.

By the tenor of the will the share to the income of which Mrs. Wright was entitled, during her life, passed at her death to her issue in the same manner as it would had she been the absolute owner and died intestate. The share, therefore, vested in them as tenants in common, at common law as to the real estate, they would have been coparceners. The share was an unit. In process of collection it was divided into parts, such division not being occasioned by any particular act of the owners but by the exigencies of collection. The title of the whole share vested at the death of the mother, but the possession was not acquired only as, from time to time, the transfers were made from the executors or those who represented them. There was no division or settlement between the tenants; that was, by mutual understanding, put

off until the estate was settled, until the whole share was reduced to possession, or so much thereof as was collectible. It seems to me, therefore, that the subject of the tenancy was the undivided share of the two in the estate of their grandfather and that the fact that it was handed over to them in different parcels or by different instruments does not change the subject of the tenancy. The whole is to be considered one subject.

The question then is, what are the rights of the plaintiff in the balance of the subject-matter of the tenancy.

A partner has a lien upon all the property of the partnership for the balance due him on a final settlement between the partners (1 *Story Eq.*, 675 ; *Buchan* agt. *Sumner*, 2 *Barb. Chy.*, 197, 200). The basis of this lien is an implied trust or pledge (2 *Story's Eq.*, *see.* 1243). The whole partnership estate is considered as set apart and held not only to pay the debts of the partnership but as security to each partner for the ultimate balance due to him for his own share of the partnership effects.

A tenant in common has a lien upon the share or interest of any co-tenant for any rents that may be due from such co-tenant (*Scott* agt. *Guernsey*, 48 *N. Y.*, 124 ; *S. C.*, 60 *Barb.*, 180 ; *Hannan* agt. *Osborne*, 4 *Paige*, 343). The reason for this rule is not given in the cases cited. The increase or rents are common property as much as the principal or the original estate. When one, therefore, takes of the increase or rents he takes a part of the common fund or property, and it may well be said that there is on his part an implied agreement to have what he has received applied on his share, or that on division he will bring it in, to the end that it may be charged to him on division, and that a court of equity works out this result through the operation of an equitable lien.

If two persons jointly purchase an estate and pay unequal proportions of the purchase-money and take the conveyance in their joint names they are deemed to purchase as in the nature of partners, and to intend to hold the estate in propor-

tion to the sums which each has advanced (2 *Story's Equity*, *sec.* 1206).

Coming down to the present case I don't think it can be said that the plaintiff on any occasion when she joined with her brother in the transfer or conveyance of any of the property sold her interest in the property then conveyed to her brother. She never treated him as purchaser of her interest, or trusted to his credit for her proportion. He was her agent in the management, and it was his duty either to invest in their joint names over again or to charge to his own share. There is no evidence of any intention on the part of either that she should release her claim on the whole for her share. There was not only a community of interest between the two but the relation of agency also existed, and, therefore, all intendments would be in favor of the plaintiff. True the plaintiff assented to her brother receiving the proceeds of the sales or collections, but with the idea that when the estate was settled she should receive her share of the whole, at the least, the contrary cannot be inferred. No release of any equitable right she might have had should be inferred. A vendor's lien for the purchase-money is not waived unless security is taken. So the plaintiff's lien in equity, if she had one, should not be deemed waived in absence of proof showing any intention to waive it.

Take the case of the large judgment, I see nothing in the way of plaintiff claiming that the entire consideration of that judgment was, in fact, hers, and that as between her and her brother she would be entitled to have whatever was received on it. This would fall within the rule as to purchasers of property furnishing the consideration in unequal proportions. Nor do I see why the logic of the rule giving a lien for rents would not apply and with greater force to the receiving of a portion of the body of the estate. If B. Huntington Wright has received from the subject of the tenancy more than the plaintiff, the excess should be considered as brought in upon and before division and then charged over to him in extin-

guishment of so much of his share of the whole. The same result is worked out by giving the plaintiff an equitable lien on the share of her brother in the balance as it now exists for her share of what her brother has received in excess of her.

Under the circumstances of this case, I hold, she has such a lien.

In this view of the case I don't see how the statute of limitations would apply.

The rights of the assignee of B. H. Wright are no greater than the rights of the latter would be. The assignee takes subject to all equities of third persons.

I do not understand it to be disputed but that B. Huntington Wright has received more than one-half. If so, very likely, the state of accounts between him and the plaintiff may be agreed on and the value of the remaining property fixed, and his half be formally transferred to her in extinguishment of so much of the balance due her.

If these things should be agreed on, no further proceedings would be necessary in order to a final decree.

If, however, those things should not be agreed on, then there should be a reference to take and state the account, also to ascertain and report the property undisposed of, with a full description thereof and its value, and the manner in which it should be sold or disposed of and report the evidence with his findings. I see no reason why, in this action, the court has not full power to finally close up and adjust the subject-matter of the tenancy and the rights of all therein. In case of reference all further questions will be reserved until the coming in of the report.

The appropriate findings or order may be settled before me on two days' notice.

Interlocutory judgment was entered in the action declaring the rights of the parties and appointing referee to state the account, &c. Upon the coming in of the referee's report the same was confirmed and final judgment was entered November 29, 1879.