(Surrogate's Court, Clinton County.  February, 1895.)

WILLS—CONSTRUCTION.
> Testator gave to his two sons equally all the income of his estate, providing that in case either son should die the survivor should receive the entire income, and that after the death of both sons "and their heirs, if they have any," all testator's property should go to his brothers and sisters. *Held*, that it was testator's intention that his brothers and sisters should have his property only in case both of his sons died without issue.

Judicial settlement of the accounts of Andrew Stafford, executor of the will of William Moore, deceased.

W. C. Watson, for the executor.

L. L. Shedden, for the heirs.

R. E. Haley, T. F. Conway, and F. A. Smith, for the collateral relatives.

BOOTH, S.    The testator, William Moore, on the 10th of March, 1883, executed his last will and testament, in which, after giving certain legacies to his brothers and sisters and other persons, he made the following disposition of his property:

"Seventhly. I give my two sons, Richard R. Moore and Alonzo S. Moore. both of Beekmantown, Clinton county, N. Y., the use and occupancy of all my real estate, and also the interest of my personal property, to be equally divided between them, share and share alike, to be paid them by my executors after the payments and bequests before stated are paid, said bequests

to be paid them three years after my death. If the use and occupancy and the interest of personal property shall be insufficient to support my two sons, in that case I authorize my executors to use an amount of the personal property sufficient to support them as long as they live, or either of them. In case one of my sons above stated should die, the surviving one to receive the whole use and occupancy of my real estate, and the interest of my personal property. After the death of my two sons and their heirs, if they have any, I give my real and personal estate to my sister Susan Bullis, wife of Louis Bullis; my sister Maria Roberts, wife of John Roberts; to my sister Phœbe Oliver, wife of Henry Oliver, and to my brother, Amos Moore, of Plattsburgh, their heirs, intending the children of my sisters and brother to have the said real and personal property. If either of my sisters or my brother should die, I give the same to their children, share and share alike."

The testator, at the time of the making of the will, was about 76 years of age. He died on the 4th day of November, 1885, leaving surviving him his two sons, Richard R. Moore and Alonzo S. Moore, both of whom were unmarried. The will was duly probated on the 20th day of November, 1885. Richard R. Moore died on the 17th day of August, 1889, leaving surviving no descendants, and un-married. Alonzo S. Moore, the other son, married on the 10th day of October, 1886, and died on the 13th day of September, 1894, leaving surviving a widow and two children, William L. Moore and Phoebe R. Moore. Both of the sons of the testator being dead, a construction of this seventh clause of the will becomes necessary to determine in whom the personal property of the testator vested upon the death of Alonzo, and in such a case jurisdiction to construe the will attaches as incident to proceedings for an accounting and distribution. Purdy v. Hayt, 92 N. Y. 450. It is clear that the tes-tator gave to his two sons, during their lives, the use of both the real and personal property, the survivor to have the entire use and income of the same; and the only question remaining is whether, upon the death of the surviving son, Alonzo, his two children take the property, or whether it goes to the collateral relatives of the tes-tator named in the seventh clause, and to their heirs. In determin-ing this question several well-settled principles are to be followed.

First. It is the duty of courts of justice to carry into effect the intent of the testator, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law. As said in Scott v. Guernsey, 48 N. Y. 120:

"The chief and only object of judicial construction, when applied to a will, is to ascertain and determine the intention of the testator."

It is evident that the will was drawn by a man ignorant of the technical rules relating to the creation of estates and the words nec-essary or appropriate to their creation, and, as said in Lytle v. Bev-erlidge, 58 N. Y. 598:

"Of such a will, above all others, it is the duty of the court to be astute in discovering and giving effect to the actual intent of the testator, as the same may be spelled out from the body of the instrument, read in the light of the surroundings and relations of the author, and the circumstances in which he was placed, and, so far as may be, unembarrassed by technical rules of construction. * * * The doctrine that the intent of a testator is the guiding and controlling rule of interpretation requires, not infrequently, a disregard of the usual technical meaning of words and phrases, and, when necessary, such technical meaning must yield to the evident intent of the tes-

tator. Rules of construction are resorted to as helps or aids in arriving at the intent of a testator, and ought not to be followed when they lead to results subversive of such intent. There is no rigid rule of law to the effect that words shall only be used in one certain sense, or requiring courts to give language the same interpretation and effect under all circumstances and in every connection."

Second. Another principle to be followed is that the law favors a construction which will not tend to the disinheritance of heirs. That meaning is to be preferred, if the case were balanced, which inclines to the side of the inheritance of the children of a deceased child.    Scott v. Guernsey, supra; In re Brown, 93 N. Y. 295;  Vanderzee v. Slingerland, 103 N. Y. 54, 8 N. E. 247.    Indeed, in Lynes v. Townsend, 33 N. Y. 561, the court states that it is one of the "established and well-known canons applicable to the construction of all wills that the heir is not to be disinherited without an express devise or necessary implication, such implication imputing not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed."   Again, in Quinn v. Hardenbrook, 54 N. Y. 86, it is said:   "The rule is peremptory that the heir shall not be disinherited, unless by plain and cogent inference arising from the will."   I deem it further settled that the word "heirs," as used in this clause of the will, refers to the heirs of the body, the lineal descendants of the two sons.    Bundy v. Bundy, 38 N. Y. 419;  Thurber v. Chambers, 66 N. Y. 47;  Smith v. Scholtz, 68 N. Y. 59.    Applying these principles, what was the intent of the testator?    The words, "after the death of my two sons and their heirs, if they have any," must have been used for some purpose.    The construction asked for by the counsel for the collateral relatives would practically blot these words out of the will.    At the time of the making of the will the testator was an old man, and his brother and sisters were also old, and owned farms and property of their own.    His two sons were living with him, and in good health.    They had no property other than what their father gave them by this will.    He was fond of them.    In his will he had already made provision for his brother and sisters, and it was evident from the ages of these brother and sisters that they must in all probability be dead before the death of the two sons.    In the event of their death, the property, according to the contention of the counsel for the collateral relatives, would descend to the children and grandchildren of the deceased brother and sisters of the testator.    I cannot believe that the testator intended to disinherit the heirs of his own body for the purpose of giving the property to his brother's and sisters' children and grandchildren, whom he had never seen or known, and some of whom were not in existence.    The language of the will, "After the death of my two sons and their heirs, if they have any," clearly shows the intent to be that, if these sons had children their children should take the property, and only in the event of the extinction of the testator's lineal descendants should the property go to the collateral heirs.    The heirs of his sons take what would go to the brother and sisters if there were no heirs, viz. the corpus of the property in fee.    The case is one of an estate created, not by ex-

press or direct gift, but inferred from language which shows an intention to give the estate, and can have no other reasonable explanation. The authorities cited by the counsel for the two children are conclusive to my mind that the two children of Alonzo take the entire property absolutely in fee. In the case of Prindle v. Beveridge, 7 Lans. 225, one clause of the will was as follows: "I allow my son Joseph to possess by devise of will the farm I now live on during his natural life; but, if he leaves no legitimate heirs, then the property is to revert" to another son. In the opinion, at page 228, the court says: "The authorities seem to favor the position that by implication the farm was devised to the legitimate heirs of Joseph." And in the opinion affirming this case, in 58 N. Y. 605, the court say: "The law would imply a devise in fee to the children of Joseph living at the time of his death, and thus give effect to the intent to provide for them in case any should be left by—that is, who should survive—Joseph, the first taker, and to limit the estate of Joseph to a life estate, and carry the remainder to David upon the happening of the contingency." See, also, In re Vower's Will, 113 N. Y. 571, 21 N. E. 690; Marsh v. Hague, 1 Edw. Ch. 180. We believe the construction given is required by the terms and general scope of the will and the manifested express intent of the testator, and is warranted by all well-established principles relating to the construction of wills. Having reached this conclusion, it is unnecessary to pass upon the other questions raised by the counsel for the collateral heirs. No question is raised on this accounting as to the correctness of the account of the executor, or as to any other part of the will, except the legacy of $200 to Maria Roberts, a sister of the testator. She died during the lifetime of the testator, and, not being a descendant of the testator, the legacy therefore lapsed, and her heirs are not entitled to it. I therefore order that a final decree be entered settling the accounts of the executors as filed, and directing that the income of the entire property accrued at the time of the death of Alonzo be paid over to the executor of the will of Alonzo, and that said decree further direct that William L. Moore and Phoebe R. Moore, the infant children of Alonzo S. Moore, are each entitled to one-half of the balance of the personal property, principal and interest, and that the same be paid over to the general guardian of said infants; that the costs and expenses of the executor in these proceedings and the fees of the special guardians of the infants be paid out of the estate, and the counsel for the two children be allowed costs, payable out of the estate. Ordered accordingly.