FREDERICK J. O'BRIEN, Appellant, v. THE GENERAL SYNOD OF THE REFORMED CHURCH IN AMERICA, Respondent; HENRY L. O'BRIEN and Others, Appellants.

*Purchase by a widow, the guardian in socage of her minor children, of land of which their father died seized, intestate — she acquires the title and is accountable only as any other trustee — the term "guardian," as used in section 1679 of the Code of Civil Procedure, applies only to a guardian ad litem appointed in the action.*

Where a woman who, by the death of her husband, became charged with the duties of a *guardian in socage* to their minor children, subsequently in good faith purchased premises as to which her husband died intestate, upon the foreclosure of a mortgage thereon, it was

*Held,* that the sale was not void under section 1679 of the Code of Civil Proced-
ure, which provides, among other things, that the purchase, by a guardian of
an infant party to an action relating to real estate, of any of the property sold,
shall be void unless he was lawfully authorized to make such purchase for the
benefit of his ward, as the term guardian, as used in that section, was intended
to apply simply to a *guardian ad litem* appointed in the action in which the
sale was had;

That the effect of the sale was to divest the legal title of the minors and to vest
it in the widow, subject to the right of the minors to invoke the aid of equity
to impress a trust for their benefit to the extent of the interests of which they
had been divested, or to compel a conveyance to them to that extent;

That, in this view, the widow stood in no other or different position from that of
an ordinary trustee; and that if the minors came into a court of equity for relief,
they would be required to do equity by compensating the widow for improve-
ments made, and reimbursing her, proportionately, for the moneys expended
by her upon the property;

*It seems,* that where a purchase is made in violation of section 1679 of the Code
of Civil Procedure, no title passes, but it remains in the original owner as
though the sale had never been made.

APPEAL by the plaintiff, Frederick J. O'Brien, and the defend-
ants, Henry L. O'Brien and others, from a judgment of the
Supreme Court in favor of the defendant, The General Synod of
the Reformed Church in America, entered in the office of the clerk
of the county of Kings on the 27th day of May, 1896, upon the
report of a referee.

The action was brought by the plaintiff, as an heir at law of one
Keran O'Brien, for the partition of certain premises of which the
said Keran O'Brien died seized.

*George G. Reynolds,* for the appellants.

*A. P. Bates,* for the respondent.

Judgment affirmed, with costs, upon the opinion of the referee.

All concurred, except BARTLETT, J., not sitting.

The following is the opinion of the referee:

J. T. MAREAN, Referee:

One Keran O'Brien died intestate in 1880, leaving a widow,
Florinda O'Brien, and nine children. One child, by a former mar-
riage, was of age, and the other eight children, by his wife Florinda,

were minors at the time of the purchase by her, hereinafter mentioned. Keran O'Brien, at the time of his death, owned a piece of real estate which was subject to two mortgages, the first for $5,000, the other for $2,000, the latter held by one Gianella. This latter mortgage was foreclosed and the premises sold in 1886, and purchased by the widow, Florinda O'Brien. There were some very old improvements on the property at the time, which added nothing to its value, and she caused them to be demolished, and erected upon the property two modern buildings, suitable to the location and to the times, at an expense of upwards of $20,000. She also paid off the $5,000 mortgage. She borrowed at the same time from the synod $25,000, which she used specifically to the extent of $5,000 in paying off the $5,000 mortgage, and to the extent of about $15,000 in the erection of the buildings. The remainder of the loan seems not to have been specifically used in paying the expenses of the improvements. The loan was secured by three mortgages made by Florinda O'Brien, two for $10,000 each; one upon each of the new buildings, and the third for $5,000, covering the whole property.

I am satisfied that Florinda O'Brien, in good faith, believed herself the owner in fee simple absolute of the property; and there is no evidence whatever, or claim of any unfairness in the sale, or that the price was kept down by any misconduct on her part. There are no circumstances disclosed connected with the sale to prejudice her title, except the bare fact of her relation to her minor children at the time of the purchase.

Their father being dead, she was charged by the statute with the duties of guardian *in socage* until a general guardian should be appointed; and those duties comprehended the duty to "safely keep * * * the inheritance of his ward." (2 Birdseye's R. S. [1st ed.] 1292, § 44; 3 id. 2516, §§ 5, 6, 7.)

It is elementary law that this duty was inconsistent with a purchase upon the foreclosure for her own use of the interests of her minor children.

. It is claimed in behalf of the children that the sale was absolutely void; that their estate was not divested, but remained in them precisely as though no sale had taken place. It is claimed on the other hand by the synod that their title was divested by the sale; that

Mrs. O'Brien acquired it subject at most only to its being charged in her hands with a trust for their benefit. The difference is radical. In the former case the O'Brien children stand upon purely legal rights with no duty to do equity as a condition, and it is very doubtful if any allowance could be made in favor of their mother or her assigns for improvements which were not at all in the nature of repairs. (See *Ford* v. *Knapp*, 102 N. Y. 135.) In the latter case they are forced into the position of demanding equitable rights in a court of equity, and must do equity, which involves compensation for improvements, and proportional reimbursement of the moneys expended in the purchase and in the payment of the first mortgage.

In support of the former proposition section 1679 of the Code of Civil Procedure is cited. This provision of the Code is contained in title 1 of chapter 14, providing for the procedure in actions relating to real estate — among other actions for the foreclosure of mortgages.

It is as follows : " A commissioner or other officer, making a sale, as prescribed in this title, or a guardian of an infant party to the action, shall not, nor shall any person, for his benefit, directly or indirectly, purchase or be interested in the purchase of any of the property sold ; except that a guardian may, where he is lawfully authorized so to do, purchase for the benefit or in behalf of his ward. The violation of this section is a misdemeanor, and a purchase made contrary to this section is void."

If the guardian meant by this section is merely a guardian *ad litem* in the action, then this case is not within it. Otherwise, it is clearly within it, and I am satisfied that the construction and effect given to similar provisions of law in reference to sales of real estate, by executors or administrators, to pay debts, under direction of the surrogate, must be given to this. Those provisions were considered in *Forbes* v. *Halsey* (26 N. Y. 53) and *Terwilliger* v. *Brown* (44 id. 237, 241), and it was held that in a case within the prohibition no title passes, but the title remains in the original owner as though the sale had never been made. I cannot find that these cases have ever been overruled or their authority in any manner questioned.

*Dodge* v. *Stevens* (94 N. Y. 209) is not within the letter of section 1679 of the Code of Civil Procedure, because the infant was not a party to the foreclosure at the sale in which the guardian

bought. It, therefore, throws no light upon the question under consideration. The case mentioned follows the rule in equity which has always governed purchases by persons standing in any relation of trust or confidence inconsistent with a purchase for one's own use.

But, in my opinion, the guardian intended by section 1679 is simply a guardian *ad litem* in the action in which the sale is had. It will be observed that the statutes under consideration in *Forbes* v. *Halsey* and *Terwilliger* v. *Brown* regulated the action and defined the duty of a *quasi* officer of the Surrogate's Court acting under the control and direction of the surrogate. Section 1679 of the Code seems to me to be intended not to prescribe any general rule for cases of purchase by one standing in a relation of confidence, but purchases by persons who in the particular action occupy the relation of officers of the court. The language of the section is, "A commissioner, or other officer, making a sale, as prescribed in this title, or a guardian of an infant party to the action," etc.; the connection in which the provision relating to guardians is used seems to indicate only a guardian appointed by the court, to take charge, in the action, of the interests of some infant party thereto, occupying a rank similar to that of the commissioner or referee who makes the sale.

A provision in the Code of Civil Procedure, altering the previously well-settled rule in law and equity, relating to the acts of trustees of any description, seems to be out of place, while the definition and limitation of what a referee or guardian appointed by the court in an action may do is germain. Besides, no reason can be suggested why a general guardian of an infant should have here been forbidden to purchase at a sale in an action to which his ward was a party, while such purchases by trustees of any other description are left to be governed by the established rules of equity.

It results from this that the purchase by Mrs. O'Brien at the sale under the Gianella mortgage is within the rule applied in *Dodge* v. *Stevens* (*supra*), in *People* v. *O. B. of S. B. B. Co.* (92 N. Y. 103), and *Boerum* v. *Schenck* (41 id. 132).

The legal title of the minor children was divested by the sheriff's deed and vested in Mrs. O'Brien, subject to their right to invoke

the powers of a court of equity to impress a trust for their benefit to the extent of the interests which had been so divested, or to compel a conveyance to them to that extent. That right is executory, and under the circumstances of this case will be enforced only upon performance of conditions precedent, the precise determination of which is beyond the scope of this action. Whoever appeals to a court of equity must do equity. (*Putnam* v. *Ritchie*, 6 Paige, 390.)

The title acquired by Mrs. O'Brien under the Gianella foreclosure has by her mortgage to the synod, the foreclosure thereof and the purchase by the synod, become vested in it. It is, of course, subject to any equities of the O'Brien children which have not been waived or extinguished, the extent or conditions of which I do not determine.

The complaint seeks no equitable relief. It is framed upon the theory that the sale under the Gianella foreclosure did not divest the plaintiff's title. The conclusion which I have reached upon that question leads to a dismissal of the complaint.

---

William N. Dykman, as Receiver of The Commercial Bank, Plaintiff, *v.* Seth L. Keeney and Others, Defendants.

*Banking Law — declaration of a dividend, only from surplus profits — liability of the directors in case of illegal dividends — they are guarantors of every debt improperly omitted from the profit and loss account — proof that such a debt has been since paid is competent — notes given by the directors — consideration for — extent of their liability on them.*

A banking corporation discounted certain notes, for the benefit of an indorser thereon, which were subsequently renewed as they fell due by new ones similarly indorsed, and thereafter, and three or four years later, the renewal notes were surrendered, and notes made by various parties, other than the original indorser, and bearing a different indorsement, were, within one year, given in payment thereof.

*Held,* that the indebtedness did not fall within the provisions of section 26 of the Banking Law (Laws of 1892, chap. 689), to the effect that, in ascertaining the surplus profits from which alone a dividend may legally be declared by a banking corporation, all debts owing to the bank "which shall have remained due without prosecution and upon which no interest shall have been paid for more than one year," shall be considered as lost.