## INSTRUMENT OF CONVEYANCE HELD INVALID AS A DEED AND NOT EFFECTIVE AS A CONTRACT TO CONVEY.

Common Pleas Court of Putnam County.

IDA WHEELER v. HENRY WANNAMAKER.

Decided, September, 1921.

*Deed—Imperfectly Executed by a Daughter Before She Had the Right to Convey—Not Effective as a Contract to Convey, When—Estoppel Not Operative Against Maker of the Instrument—Application of the Statutes of Limitation—Tenant in Common Not an Occupying Claimant—Not Entitled to Compensation for Improvements—But Taxes and Assessments Become a Set Off Against Rents and Profits.*

1. A deed, made by a daughter for land belonging to her father during his lifetime, does not convey any title, and does not estop her minor child from taking a portion of his estate under the provisions of his will, where the daughter, who executed the deed, died before the death of the testator.

2. A paper signed by such child after she attains her lawful age, at the suggestion of her father, on behalf of one claiming the land under the deed of her mother made when she had nothing to convey, under the circumstances described in syllabus 1, without her having been made acquainted with the facts, without consideration, she relying upon the good faith of the person who requested her to sign, no magistrate taking her acknowledgement, signed in the

presence of but one witness, can not be made effective, as a deed by being placed in the hands of an officer, who in the presence or a second witness fills up the form, in her absence, and without her consent or acknowledgement delivers it to the person named therein as grantee.

3. Such instrument is void as a deed, and being wholly without consideration, and not intended as a settlement of a disputed title is not a contract to convey, since it lacks all the elements of a contract except her name.

4. Such instrument does not operate as an estoppel against her, when the grantee knows or is bound to know, the facts, or when he is placed in no worse position than he occupied before.

5. The statutes of limitation do not begin to run in such case until the facts upon which the party seeking advantage in the transaction are discovered by her.

6. The statutes of limitation do not run against a tenant in common until the tenant in occupation has made some unequivocal assertion of absolute ownership of the entire estate against his co-tenant, with the knowledge of his co-tenant actual or fairly imputed.

7. Such assertion of ownership can not take place when the tenant in possession secretes the facts concerning the co-tenant's right from her.

8. A tenant in common can not be compensated as an occupying claimant for improvements against his co-tenant, when he occupied and used the premises with knowledge of his co-tenant's rights, but he may off-set taxes and assessments against rents and profits received by his co-tenant.

EASTMAN, J.

The plaintiff filed her petition in this case September 26, 1918, and the summons was served four days later. In the petition she alleges that she had a legal right to, and is seized in fee simple of, one-undivided one-eighth part of the west half (one-half) of the southwest quarter (one-quarter) of section twenty-four (24), Town one (1) south, Range four (4) East, Monterey township, Putnam county, Ohio, and that seven-eighths of said land belongs to the defendant.

In the petition she alleges that she is such owner as a daughter of Rosina Harpster, who was a daughter of Gottfried Stirn. The amended petition uses substantially the same language and was filed December 20, 1918. This language taken in its ordinary

meaning does not correspond to the facts developed at the trial, neither does it correspond to the further allegations of the petition and the amended petition, for it appears in said amended petition that whatever right the plaintiff has is dependent upon the will of Gottfried Stirn, which is set forth in substance in said amended petition, and leave to amend was granted during trial to conform the petition to the facts.

She also sets forth that the defendant obtained a deed from his father, Joseph Wannamaker, March 29th, 1886; that Rosina Harpster died in 1879; that she claims under the will of Gottfried Stirn, who died over two years afterwards, which will was probated in April, 1883, and further that on the 29th day of October, 1897, Joseph Wannamaker procured from her a deed by certain false representations, etc., and charged that the deed is not in fact a deed; that it was not witnessed; that it was not acknowledged; that said Joseph Wannamaker acted as justice of the peace in filling up the form, and having it signed and witnessed in her absence, and without her knowledge; that her signature was procured by a representation that it would avoid trouble and humiliation; that she did not know what she was signing, and the paper was afterwards presented as a deed, and recorded without consideration, and without her knowledge.

That the defendant has had the use and occupancy of said lands through said fraud and deceit until the commencement of this action, and has received the rents and profits thereof, and converted the same to his own use.

She therefore prays that her so-called deed be set aside, and that partition may be made giving her the one-eighth interest in said land.

To that amended petition filed sometime after the filing of an original answer, an amended answer and cross-petition was filed.

First defense. Defendant denies that plaintiff has a right to or is seized of the undivided one-eighth part, or any part of said land; denies that the deed described in the amended petition from plaintiff to Henry Wannamaker, was procured by fraud or deceit, or either, and avers that the same was executed by her own free will and accord, for value received, and seeks to quiet the title of defendant in said land, and denies all other allegations in said petition contained not specifically admitted.

Second defense. Defendant pleads the twenty-one year stat-
ute of limitation.

Third defense. Defendant pleads that plaintiff has estopped
herself by the deed described in her amended petition, and al-
leges that he has made lasting and valuable improvements, and
paid taxes on said land from October 27, 1896, to the commence-
ment of this action to the amount and value alleged in the
seventh defense; and then pleads an estoppel under the cove-
nants of warranty contained in the deeds of George Harpster
and Rosina Harpster et al, recorded in volume 33, page 93, deed
records of Putnam county.

Fourth defense. This is a duplication of the second defense,
a plea of the twenty-one year statute of limitation.

Fifth defense. This is a plea of the four-year statute of
limitation against actions for fraud.

Sixth defense. This is a plea of the ten year statute of lim-
itation.

Seventh defense. This is a plea of an alternative defense
under the occupying claimant's law, and sets forth the value
of the land at $19,500, alleges the valuable improvements amount-
ing to $11,500 and without setting forth the taxes and assess-
ments alleges their payment. Also that in the event relief
should be denied under the occupying claimant's law, that he
may have an accounting of taxes and assessments paid and the
value of improvements.

Cross-petition. The cross-petition alleges the ownership of
the land by the defendant through a deed from Joseph Wanna-
maker, and a quit-claim deed described in the amended petition,
dated October 29th, 1897, and says that he relied upon said
deeds, and that the same is recorded in volume 75, page 529. It
further avers that if it should be found that said instrument
is not a valid deed, that it is a valid contract with defendant
to convey any interest that plaintiff may have in said lands;
and that he is entitled in equity to have it enforced.

The answer prays the dismissal of the petition and other
relief.

Taking up the defenses one by one, there will be sufficient con-
sideration of the several causes of action in the petition, so that
it will not be necessary to repeat any of them here.

The first issue to be heard in the case, and the only one that really has been heard is the question of the deed made by Ida Wheeler to Henry Wannamaker, October 29, 1897. A series of deeds, incluing one made by her father and mother purporting to convey the title to this land to Joseph Wannamaker and one from him to Henry Wannamaker, the defendant herein, have been introduced.in evidence. The mortgage from Henry Wannamaker to his father has also been introduced. It will be found in volume 21, page 234, mortgage records, and it appears to have been released seven years before any deed was made by Ida Wheeler, or the pretended paper was signed by her, and eleven years after he had obtained the land from his father.

The deeds which purport to convey this title to Joseph Wannamaker were made by all the children of Gottfried Stirn, more than two years before he died, and while he was in the asylum for the insane. Objections were made to their introduction as evidence, and also as to any explanation that might be made concerning them by witnesses.

The rulings on these objections will be noted in the transcript, as they were taken under advisement, to be decided later. The deeds themselves as such could convey no title whatever, because the parties could not own any interest whatever in their father's estate, so long as he was living, unless by conveyance from him, and he was incompetent to make any such conveyance, or consent to the same.

They were simply instruments of speculation upon the probability that the parties might at some time have an interest in their father's estate. Plaintiff was a baby, when they were made, or about one year old. Between two and three years afterwards Gottfried Stirn died. As to the people who took money for such instruments the covenants in them might have acted as an estopel, provided they survived the ancestor, whose estate they had sought to divide. He made a will many years before he had gone to the asylum, and sometime after his death that will was admitted to probate.

The plaintiff in this case obtains whatever right she has by the terms of that will, she being the only daughter of Rosina Harpster, and her mother having died long before the testator, through whom her claim arises. No estoppel could apply to an

infant less than three years old, whose mother had died before
any title could mature in *her*. The plaintiff is not barred by her
mother's deed because she does not claim under her mother, but
under her grandfather's will. The deeds made by the Stirn
children and the possession under them, conferred not even a
color of title in Joseph Wannamaker and his wife.

No statute of limitation would run against even the owner
who is admitted to be incapable of consenting, or of protecting
his rights at the time. If he had become competent, their posses-
sion could have been ousted, or a guardian appointed for Mr.
Stirn could have ousted them. Rosina could not have denied
her deed because she estoped herself by deed for property that
she did not own, and when it came to her by will, if she had been
living, the title she undertook to convey would have become
consumated, but she died before she had anything to convey,
leaving the plaintiff only about two years old.

The second and fifth defenses will be considered together.
Plaintiff remained in ingnorance of the imposition practiced
upon her until 1916; then brought this action in 1918, clearly
within the four year period.

Is she barred by the twenty-one year statute of limitation?
She claims under the will of Gottfried Stirn, probated on April
21, 1883, but which spoke from May 29, 1881, the time he died.
Joseph Wannamaker and his wife both were tenants in common
with her under the same will, and under estopel in the deeds
that had been made. She was then a child, and the statute
could not run, nor could any tenant in common assert an ad-
verse claim to set it in motion. She was born March 27, 1877,
and hence was about three years old when Stirn died, and one
year or less old at her mother's death. She was 19 years old
when she signed the paper, which is claimed to be a deed, as
above described. Had she known what it was, the statute might
have operated against her, and at the end of twenty-one years
cut off her right in favor of a *bona fide* holder. She learned of
the facts in August, 1916, less than 18 years afterwards, and
after some attempt at settlement had been made, commenced
this action September 26, 1918, twenty years, ten months, and
twenty seven days after that deed was made. The summons was
served four days later, and hence, if the twenty-one year statute

applied to her, she is one month within the limit, but the paper known as exhibit 1 is not a deed in fact, nor is it a valid contract. It lacks all of the essentials of a contract, except her signature. There was no negotiation of any kind, no consideration, no meeting of minds, no understanding or promise, and not even an explanation of what deed of her mother's made twenty years before, and without her knowledge, was to be corrected. It is not an estopel because she did nothing by which the defendant acquired any advantage or caused him any loss of right, and while her careless signing is censurable it is not of such nature as to deprive her of her land, which she did not attempt to convey and as stated above, she being a tenant in common with Henry Wannamaker, its record by him cannot be held as such an adverse assertion of title, as to invoke the limitation against her.

Third defense. Two causes are pleaded. First, improvements and taxes, and second, estoppel. The second is treated above, and the first is to be considered later on.

Sixth defense. The ten year statute of limitation does not apply for the same reason as stated under the fifth defense.

The defendant purchased the eighty acres in controversy March 29, 1886 from his father Joseph Wannamaker for $4,000.00, and went into possession while plaintiff was still ignorant of her rights, and only about nine years old. At the age of 19 she signed the deed described in the pleadings and carelessly permitted it to go on record. Its possession perhaps left the defendant a feeling of security, and may have caused him to do more than he otherwise would have done in the way of improvements. On the other hand his father knew from the time Gottfried Stirn died, if not before, that plaintiff was a tenant in common with him, and with the knowledge sold to the defendant all his interest in the land, and his knowledge was and is now imputable to the defendant. Furthermore, an examination of the records in this regard, in the recorder's office would have made clear to him the true state of his title, and probably did so, because he sought this quit claim from her with the intent to correct it. Some negligence is therefore imputable to each party, but the stronger equity is with the plaintiff. He should have made her acquainted with the fact and dealt with her for her interets in good faith, but instead he sought through his

father, and he through her father to obtain the land for nothing,
keeping her in ignorance of the facts until she discovered them
from other sources.

There is some claim made by the defense that this land was
retrograding, and in need of attention, and for that reason
the children of Gottfried Stirn, when he was in the asylum
sought by the deeds they made to partition and divide up the
land, and have it cared for, and possibly to support the father.
There is no evidence tending to show that anything was ever done
toward supporting him, and scarcely a hint of evidence aside
from the deeds themselves to show what their purpose really was,
but the deeds themselves show on their face, and the evidence of
George Harpster also shows, that they were deeds of bargain
and sale, and not deeds in partition; that the actual consideration
of $300.00 to each son and daughter was paid for his or her share
or supposed share in the lands. This can not be said to be more
than gambling, upon the prospective inheritance. A guardian
might have been appointed, and he might have sold the entire
estate, and recovered from the occupant damages for trespass,
or at least for rents and profits, or if Mr. Stirn became com-
petent afterwards he could have recovered that possession and
transferred the land either by deed or will to any person he
chose, and it seems that he had already executed the will many
years before, which afterwards became effective and under that
will this plaintiff claims her title, and these deeds being bargain
and sale, and not partition could not set the statute of limitation
in motion. See Judge Dillon's opinion, 3 N. P. (N. S.), page 272

Further reference ought to be made to the case cited, and to
the several defenses herein for a full understanding of the prin-
ciples applicable.

The statute of four year limitation runs from the discovery
of the fraud. She discovered it in August, 1916, and filed her
petition in 1918, a little over two years after the discovery.

The prescription of twenty-one years is considered above,
The assertion of absolute ownership by a tenant in common must
be with knowledge of the co-tenant actual or plainly imputed.
Joseph Wannamaker deeded on March 29, 1886, plaintiff was
born March 27, 1877. She was nine years old, without a guar-
dian. How could his act be an assertion of absolute ownership
against her? She is therefore within the rule of *Young* v.

*Heffner*, 36 O. S., page 232, and not within the principle asserted by Judge Dillon, in the case of *Chambers* -vs- *Wilcox*, 3 N. P., N. S., page 269, as noted by defendant's attorney on page four of this brief.

The deed from plaintiff to the defendant known in this case as exhibit one, being considered, it is always the policy of the law to encourage people to settle their controversies, but there must be a fair settlement. This case is not such. The girl was totally ignorant that her grandfather had willed her one-eighth of the land. The father of the defendant knew it, and knew as well, of the worthless deeds that had been made to him some years before, and then by making a deed for all the land to his son, the defendant, and keeping her in ignorance of the fact, through her father induced her to sign a paper by means of inciting the belief in her that she was correcting something her mother had done, not settling any difference or selling anything, sought to complete her conveyance by filling up the deed form in her absence and without her knowledge. She was careless as hundreds of others are but hers was innocent carelessness. He was attempting to take from her something of value without any return, and true it was not an acknowledgment of cotenantcy, it was an attempt to take advantage, and however innocent of its consequences he might have been, it came very near accomplishing the purpose.

This girl was an orphan, married young, had never made much acquaintance with her mother's people, never mingled with them, had no training in business matters, especially in real estate matters; was not settled with, or properly represented in the contest of her grandfather's will, and at no time before or after her marriage, had a fair opportunity to know of her rights, and hence she is entitled to every fair consideration of equity, the purpose of which is to protect the innocent.

Authorities on estoppel. No fraud or intention of fraud can be imputed to her. All the wrong is done to her, and she is entirely free from the imputation in the case of *White* v. *Brocaw*, 14 O. S., page 339, and is within its protection.

The quotation from *Hart* v. *Gregg* (Coke) has reference to a case in which the warrantor had somthing to release and the son was attempting to take that something under his ancestor, the warrantor. Plaintiff's mother made a warranty deed, when

she had nothing to sell, and died two years before she could have had anything. Plaintiff takes title under a will which speaks afterwards, without any relation to the covenant. The recital in her deed made in 1896 would have bound her, if the deed had been valid, which it is not for want of all the essential facts, except the name, and for the same reason, that is, that she does not take under her mother, none of the cases cited in any way bind her.

If the plaintiff were claiming under her mother the case of *Garlick* v. *Railway*, 67 O. S., page 223, would probably shut her out, but she is not. The deed made by the mother might and probably would have estoped her (the mother) from taking her share under father's will, and yet that may be a question, but it certainly could only work an estopel against the one who made it, upon the principle, that no one is permitted to take advantage of his own wrong, especially not against an innocent child then about three years old.

She does not claim under her mother, hence does not fall under the ban in this case, the 67th O. S. and the citations therein. They all discuss claims made under conveyances from persons whose deeds or interests were from the original source of title, and that source was in each case actual. In the case of *Garlick* v. *Railway* a claim of abandoment was made, which was denied by the court. That question does not arise in the case at bar.

The adjudication there was upon the covenant made in the conveyances from those who originally owned the title, and after the railway company had occupied the land for a long time, and was still occupying it, made a deed to Mr. Garlick, the plaintiff in error, and he sought to claim the land on the theory that the deed made by one railroad company to another was an abandoment of the easement originally transferred to the railroad company.

All of the holdings in the case are to the same effect and hence they do not modify the other rulings made by the courts of the state upon this question.

In his cross petition the defendant sets up the deed known in this record as exhibit one, recorded in volume 75, at page 529, deed records of Putnam county, in which the recital concerning the deed of plaintiff's mother recorded at page 93 of volume 33 is made, and prays the dismissal of plaintiff's petition, and in

the alternative that if the plaintiff be found to have a better title than the defendant, that he be reimbursed under the occupying claimant's law.

Section 11908 provides that a peson who without fraud or collusion on his part obtains title to, and is in the quiet possession of, lands or tenements claiming to own them shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant or his heirs is paid the value of lasting improvements made by him on the land, or by the person under whom he holds by commencement of suit for the adverse claim, whereby such eviction may be effected, unless the occupying claimant refuses to pay to the party establishing a better title, the value of the lands, without the improvements made as aforesaid on demand by him or his heirs when,

1. Such occupying claimant holds a plain and connected title in law or equity derived from the records of a public office; or,

2. Holds by a deed, devise, consent, contract, bond, or agreement from and under a person claiming the title as aforesaid derived from the records of a public office, or by a deed duly authenticated and recorded; or,

3. Under a sale on execution against a person claiming title as aforesaid derived from the records of the public office, or by a deed duly authenticated and recorded; or,

4. Under a sale for taxes authorized by the laws of this State; or,

5. Under a sale and conveyance made by executors, administrators, or guardians, or by any other person or persons, in pursuance of an order or decree of court where lands are directed to be sold.

Joseph Wannamaker, defendant's father and the grantor in this title, well knew all of the facts connected therewith, and there is some evidence tending to show that the defendant himself knew them. The instrument pleaded in this cross petition as a deed is not in fact a deed, for the reasons stated above, and the defendant having taken it without consideration and with the knowledge of the conditions under which it was executed without consideration, and perhaps with his own knowledge as well as that imputed from his father and grantor, is only a

tenant in common with the plaintiff, and is therefore not an occupying claimant within the meaning of this statute, and does not fall within the rule in equity implied in the argument of the court in the case of *Harrison* v. *Castner*, 11 O. S. on p. 339.

It is not possible for a tenant in common to be in adverse, quiet, possession against his co-tenant, and there was no such assertion of absolute and complete title in this case as to bind the plaintiff. The title of the plaintiff to one-eighth of this land is equal in right to the title of the defendant to the seven-eighths. It cannot be said to be paramount, and adverse, but only that of tenant in common, and with the defendant's knowledge. See *Preston* v. *Brown*, 35 O. S., page 18; *Allen* v. *Russell*, 59 O. S., 137; *Putnam* v. *Richie*, 6 Paige, 390; *Corbett* v. *Laurens*, 5 Rich. Eq., 301.

The defendant is, therefore, not entitled to be compensated for lasting and valuable improvements made upon this land as against the plaintiff. His title is derived from the same source that is, the will of Gottfried Stirn. It is true that his uncles and aunts conveyed to his father and his father to him a pretended title, and his mother acquired a one-eighth interest through the same will, under which the plaintiff acquired her interest. The uncles and aunts estopped themselves by their covenants from taking that which they acquired subsequently by that will, but the plaintiff acquired her title absolutely free from any imputation of that kind, because at the time of the covenant she was a small child and even at the time the defendant acquired title from his father under the deed set forth in the record she was still many years under age, and at no time did she ever know anything about her rights until 1916, and she therefore takes her title to one-eighth of this land, free under the sections of the statute above cited.

There is a claim made in the answer and cross petition of defendant for taxes and assessments, and he is entitled to be reimbursed for one-eighth of those taxes and assessments, but on the other hand, there is a claim by the plaintiff for the rents and profits for her share of the land, and there is no evidence of the amount of taxes and assessements paid, and no evidence up to this time of the value of the rents and profits, and unless an adjustment can be made by the parties themselves it will be necessary to have a further hearing on those questions.